Harold R. Soden, J.
The Board of Supervisors of Warren County, on March 12, 1962, adopted four resolutions pursuant to section 1 of chapter 278 of the Laws of 1947, as amended.
Resolution No. 57 imposes a tax at the rate of 2% on retail sales of tangible personal property in the County of Warren beginning on July 1, 1962, and is entitled “ Retail Sales Tax
Resolution No. 58 imposes a tax at the rate of 3% on the sales of food or drink in restaurants and other establishments in the County of Warren beginning on July 1, 1962, and is entitled “ Restaurant Tax
Resolution No. 59 imposes a tax at the rate of 3% on the rent or occupancy of a room or rooms in hotels, apartment hotels or lodging houses in the County of Warren beginning on July 1, 1962, and is entitled “ Hotel Room Occupancy Tax ”.
*929 ■ ’Resolution No. 60 imposes an'excise tax for the privilege of using within the County of Warren any article of tangible personal, property purchased, at: retail .beginning July 1, 1962, and- is entitled.1‘.Compensating Use. Tax ”,
By notice, the petitioners on-behalf of ■ themselves and all other persons similarly situated brought a motion for an order pursuant to article 78 of the Civil Practice Act, returnable at Elizabethtown, Essex County, New York, on the 22d day of May, 1962, for an order directing the Board of Supervisors to forthwith convene and provide by resolution for the submission to the qualified electors of Warren County the matters contained in the Warren County Board of Supervisors’ Resolutions Nos. 57, 58, 59 and 60 and further praying that the said resolutions as adopted by the said Board of Supervisors be ineffective until approved by the affirmative vote of the qualified electors of Warren County.
Arguments and evidence for and against the motion were heard by the court at Elizabethtown, New York, on May 22,19.62 and June 18, 1962.
Pursuant to section 101 of the County Law, the petitioners caused to be filed with the clerk of the Board of Supervisors of Warren County on April 10, 1962, a petition requesting that the matters contained in the aforesaid resolutions be submitted to a referendum. The petition in proper form was timely filed and by number contained more than 5% of the total vote cast for Governor in Warren County at the last gubernatorial election. The time in which to attack the petition expired and, hence, the court assumes that the petition was valid in all respects.
The contention of the county is mainly fourfold: (1) That the proper procedure herein is a taxpayer’s action pursuant to section 51 of the General Municipal Law, and (2) but that the effective date of the sales tax may be other than the beginning of a fiscal year, and (3) that the resolutions were properly and legally adopted by the Board of Supervisors, and (4) that the adoption of the tax resolutions under section 1 of chapter 278 of the Laws of 1947, as amended, is not subject to a referendum on petition of the qualified electors of the county.
In view of the facts presented and the relief demanded by the petitioners, an article 78 proceeding is the proper method of procedure. An action under section 51 of the General Municipal Law is equitable in nature and as such is not available if there is an adequate remedy at law. Mandamus is a legal remedy. It has been held that an action under section 51 of the General Municipal Law was not the appropriate remedy where mandamus was available.. (Southern Leasing Co. v. Ludwig, 217 *930 N. Y. 100; Wurster v. City of New York, 136 App. Div. 408, affd. 199 N. Y. 534; Publicity Leasing Co. v. Ludwig, 217 N. Y. 622; People ex rel. Publicity Leasing Co. v. Ludwig, 172 App. Div. 71; West Side Mtge. Co. of N. Y. v. Leo, 174 N. Y. S. 451, 459; Gilmartin v. City of New York, 20 Misc 2d 235; Moore v. Town of Oyster Bay, 29 Misc 2d 169.)
Being forced to proceed under section 51 of the General Municipal Law would involve an unnecessary delay before an initial decision could be made. Mandamus is the proper remedy under the facts presented in this proceeding. It affords all parties the benefit of a quicker initial decision and an earlier appeal if necessary. -
The manner and method by which a county establishes a budget for any given fiscal year, comprised mainly by a tax on real property, is set forth in article 7 of the County Law. Here the Legislature makes certain procedures mandatory. The county by undertaking such procedure levies, collects and operates all subdivisions of county government, with other assistance, through a tax on real property situate within the county.
Other sections of the County Law provide different methods of raising moneys for county expenses in the nature of capital notes, bonds and supplemental budgets.- (County Law, §§ 363, 364, 365, 366; Local Finance Law, § 29.00. )
Though the Legislature has set forth strict procedures in respect to the levy, collection and expenditure of property taxes (real estate), such rigid controls have not been established in connection with nonproperty taxes (nonreal estate). “ Expenditures from the proceeds of any such tax shall not be considered as part of the cost of government- within the meaning of any limitation on expenditures contained in any general, special or local law applicable to such county, city or village ”. (L. 1948, ch. 651, § 2, § 12.)
The Legislature sets forth the purposes for which nonproperty taxes could be used.
“ Except as otherwise provided in this act the local law, ordinance or resolution imposing any county tax pursuant to this act may set aside for county purposes or educational purposes all or any portion of the -net collections therefrom.” (L. 1952, ch. 811, § 2.)
“ Amounts not set aside for county purposes or educational purposes shall, except as otherwise provided in this section, be allocated quarterly to the cities and the area in the county outside the cities in proportion to their respective populations. * * * The amount so allocated to the area outside the cities, or to the entire area of the county where the county does not *931 contain a city, shall be applied first to reduce county taxes levied upon real property in the several towns in such area. Any balance remaining shall then be-applied to reduce general-town taxes levied upon real property in such area. * * * The amount allocated to each city shall be similarly applied to reduce the county tax levied upon real property in such city, except that if any such city, by local law, ordinance or resolution shall so provide, the amount which would be so applied to reduce the county tax levied upon real property in such city shall be paid directly to the city in lieu of such tax reduction. ” (L. 1952, ch. 811, § 2.)
Like provisions are provided in respect to villages within a county.
It is apparent that the Legislature while authorizing the collection of nonproperty taxes has excepted from the expenditures of nonproperty taxes the cost of operating the government but has wisely provided that the nonproperty taxes collected under this authority shall be used for educational purposes or for the reduction of county taxes levied upon real property. Therefore, it makes no difference when the effective date of the levy of nonproperty taxes is established by the- county during any fiscal year, as the expenditure of the taxes, other than the cost of collection, is mandated and directly benefits the taxpayer.
There is no issue raised concerning the constitutionality of section 1 of chapter 278 of the Laws of 1947, as amended. Likewise, there is no issue raised as to the power of the Board of Supervisors of Warren County to adopt the so-called Sales Tax Resolutions Nos. 57, 58, 59 and 60 for the year 1962.
It is true that the Warren County Board of Supervisors adopted certain rules and regulations governing their procedure as a board. However, a motion was duly made and adopted by the board suspending the rules of procedure - of the board prior to the adoption of the sales tax resolutions. If a board has a right to make rules and regulations concerning their procedure, they have a right to abrogate or suspend them.
The remaining question raised in this proceeding and the most important is whether, or not the law makes mandatory a referendum of the propositions contained in the resolutions passed by the Warren County Board of. Supervisors, referred, to herein as resolutions.Nos. 5.7' .through 60, inclusive, in-other, words, whether a so-called--permissive-referendum is mandatory under the facts presented in this proceeding.
The Legislature of the Staté of New York by its enactment of section 1 of chapter 278 of the Laws of 1947, as amended, granted counties outside New York City the power and authority to *932 levy and collect nonreal estate taxes. There is no .doubt that the county board by its four resolutions has taken the initial steps to levy and collect taxes of the type set forth in chapter 278 of the Laws of 1947. 1 ‘ Ever since the referendum has found recognition in the political system of this state it has been the policy of the Legislature to deal with it directly and in express terms, and not delegate the right to adopt it to inferior legislative bodies.” (Mills v. Sweeney, 219 N. Y. 213, 217.)
The power and authority of a county board is derived from the Constitution or some statutory grant from the Legislature. (Matter of McCabe v. Voorhis, 243 N. Y. 401.)
Likewise, the State Legislature directs the method or methods by which the county board must act in legislating.
If a referendum is not specifically authorized by the Legislature, the county board has the sole right and duty to initiate, vote upon, and effectuate any local law, ordinance or resolution. A county board may not even spend tax moneys to submit a proposition to the electorate if the board has the sole authority to act (Matter of McCabe v. Voorhis, supra).
If a local law, ordinance or resolution of the board is subject to a mandatory referendum, the Legislature thus directs the board to initiate, the electorate to vote upon, and the board to effectuate or carry out the vote of the majority. (County Law, § 100.)
If the Legislature, on the other hand, enacts legislation by which a county board may act and makes it subject to a permissive referendum, then the county board has a choice of two procedures:
(1) The board may choose to submit the proposition or propositions to the electorate in the manner provided for the submission of a question to electors pursuant to the Election Law and article 3 of the County Law — in this instance, the county board initiates, the People vote upon, and the board carries out the decision of the electorate; or
(2) The board may on.its own motion initiate, vote upon, and effectuate its majority decision. •
.However, if a county board initiates and votes upon a local law, ordinance or resolution which is subject to a permissive referendum, then and in that case, if a'petition in proper form is signed by the electorate in number not less than 5% of the vote cast in the last gubernatorial election in said county and the same is properly filed with the clerk of the board within 30 days following the enactment of the resolution by the county board, then the proposition must be subitiitted to the electorate *933 and the board is bound by the majority vote of the electorate. (L. 1955, ch. 448, §1; County Law, § 101.) '
History has proven that Americans have reacted violently to "the imposition of any tax they considered unfair. Perhaps no Nation, following a victorious war, has rebuilt defeated nations as this country has since World War II. With all phases of government extending its controls nationally, Statewide, and locally, the American taxpayer has been called upon for a greater sacrifice than at any other so-called ‘ ‘ peacetime ’ ’ in our history. In addition, the taxpayer has been paying for the support of the entire noncommunistic world as well as many countries Avithin communistic control. In view of the Avillingness to help others and the demonstrated charity to all, it seems that the court should, within the framework of the law, permit the People to vote upon any new tax (sales tax).
There is no doubt in the mind of this court that the Warren County Board of Supervisors acted in good faith and in the public interest in adopting the nonreal estate tax resolutions. However, though the county, in acting upon legislation which is subject to permissive referendum may elect to vote on the same as a Board of Supervisors, they may not continue to refuse to submit the propositions to the qualified electors of the county in the case where legal and timely procedures have been taken demanding a referendum on petition.
It is the decision of this court that resolutions Nos. 57, 58, 59 and 60, as adopted by the Warren County Board of Supervisors on March 12, 1962, are null and void and shall not take effect on July 15, 1962, and further that the Warren County Board of Supervisors will convene and by resolution submit to referendum the propositions contained in said resolutions to the qualified electors of Warren County for their approval or disapproval.