Bertram Harnett, J.
An attorney who wins a lawsuit for his client has a lien on the money recovered to insure just compensation for the services he rendered. Suppose the client, at the tilne, owes his ex-wife money on a judgment lien arising from a previous divorce decree. Who gets the money first, the wife or the lawyer? Stated more elegantly, whose lien has priority?
I. THE CLASH OF CLAIMS FOR SUPPORT AND ATTORNEY’S FEE
Respondent, Guy V. Spinello, is a medical doctor who was owed money by his partner of six years, Alwyn Rand, M. D., when their joint practice terminated in August, 1970. That money, assessed in arbitration at $7,500, is the subject of two conflicting liens, one asserted by Dr. Spinello’s ex-wife for past support arrears, and the other by his attorney for his fee in collecting the $7,500.
A. The Attorney’s Fee
In 1970, in order to secure recovery of his share of partnership funds held by Rand, Dr. Spinello retained an attorney, John E. Callaghan,.and agreed to pay Mr. Callaghan an attorney’s fee of 50% of whatever moneys were recovered. Under an agreement between the two doctors to submit controversies between them to the American Arbitration Association, Mr. Callaghan served a notice to arbitrate on August 7, 1970. Several unsuccessful proceedings to stay arbitration were commenced by Dr. Rand, followed by appeals, likewise unsuccessful, and in late 1971, *523 after a lengthy hearing before an arbitration official with protracted submissions of supplemental material by both sides, the arbitration award of $7,500 was made to Dr. Spinello. On January 19, 1972, Dr. Spinello moved in Supreme Court to confirm the award, and on February 19, 1972, an order granting his motion was made on default.
Mr. Callaghan’s fee for legal services rendered, under his initial agreement with Dr. Spinello, is one half of the award, or $3,750. Mr. Callaghan claims that his statutory charging lien for this amount is superior to any claim by Dr. Spinello’s creditors, including one for support by his ex-wife. The attorney also seeks to have Dr. Spinello’s debt of $897.95 to the American Arbitration Association for the expense of arbitration paid out of the award.
B. The Ex-Wife’s Support Judgment
Dr. Spinello and his wife Willa were divorced in 1969. The decree incorporated, but did not merge with, a prior separation agreement dated July 15, 1969, which provided for the support and maintenance of the wife and the two infant children of the marriage.
On November 10, 1971, a judgment in the amount of $9,005, against Dr. Spinello for past support and alimony arrears, was entered, and on December 15, 1971, Mrs. Spinello’s attorney served a restraining notice upon Band, garnisheeing the inchoate partnership debt owed to her ex-husband, and funds in payment therefor, still then the subject of arbitration.
C. Present Procedure
In the proceeding brought pursuant to CPLB 5227, she seeks to have the entire arbitration award of $7,500 applied towards the unsatisfied $9,005 support judgment without any subtraction for Mr. Callaghan’s fee or the association’s claim for its services. Dr. Band is willing to deliver the amount awarded, but is concerned about having to choose, at his peril, between competing claimants and the possible double liability in paying the wrong claimant. Dr. Spinello does not claim any money for himself, but does urge that his attorney and the association be paid from the fund ahead of other creditors. All parties seek a court direction as to whether Mrs. Spinello is entitled to the entire award of $7,500, or the net sum remaining after subtracting the lawyer and/or arbitration fees.
II. PRIORITY OP COMPETING LIENS
In determining which claim is superior, it must be ascertained which lien attached first to the disputed property (Matter of City *524 of New York [Brooklyn Bridge Southwest Urban Renewal Project], 31 A D 2d 895) and whether either lien takes precedence as a matter of public policy. (Kalish v. Kalish, 7 Misc 2d 612; Matter of Peters [Bachmann], 271 App. Div. 518, mod. on other grounds 296 N. Y. 974.)
A. Time Priority
There can be little doubt that on December 15, 1971, Mrs. Spinello, as her ex-husband’s judgment creditor personally serving Band with a restraining notice, established her lien against any debt owed to Dr. Spinello by Band. (CPLR 5222; Matter of Neilson Realty Corp. v. Motor Vehicle Acc. Ind. Corp., 47 Misc 2d 260; Matter of Bayside Mason Supplies v. Barber Co., 31 Misc 2d 921.) But the time of creation of Callaghan’s lien is less obvious.
There are two kinds of attorney’s liens, (1) the general possessory retaining lien established by common law allowing an attorney to keep a client’s papers or assets until his or her legal fee is paid; and (2) the charging or special lien statutorily established against moneys recovered for a client by the attorney’s efforts in litigation. (Matter of Cooper [McCauley], 291 N. Y. 255; 3 N. Y. Jur., Attorney and Client, p. 542.)
While an attorney may pursue other existing remedies to secure payment of a fee, the charging lien asserted by Mr. Callaghan “ exists ” only by virtue and under the strict limitation of, section 475 of the Judiciary Law, which provides in pertinent part: “From the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department, except a department of labor, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client’s cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client’s favor, and the proceeds thereof in whatever hands they may come ” (emphasis added).
Two basic requirements must be met in order for an attorney’s fee for services to be protected by the statutory charging lien. The services must be rendered in (1) bringing of an affirmative claim; and (2) the type of “ action, special or other proceeding ” described in section 475 of the Judiciary Law. (National Exhibition Co. v. Crane, 167 N. Y. 505.)
Although arbitration was at one time classified as a “ special proceeding” by section 1459 of the Civil Practice Act, CPLB 7502 omitted any such reference and instead sought to avoid imposing the formality of a judicial proceeding upon arbitration *525 until the first application is made to a court. (8 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 7502.04.) Even if classified as an ‘ ‘ other proceeding ’ arbitration is not before a ‘ ‘ state, municipal or federal department”. Therefore a statutory attorney’s lien was not created by Dr. Spinello’s service of the notice to arbitrate. (Avalon Fabrics v. Raymill Fabric Corp., 96 N. Y. S. 2d 50; see Matter of Albrecht, 225 App. Div. 423, affd. 253 N. Y. 537.)
While Dr. Band’s subsequent applications to stay arbitration may be properly classified as ‘ ‘ special proceedings ’ ’, they do not establish the charging lien of the attorney defending in those proceedings. A charging lien, being available only for affirmative actions or counterclaims, does not attach when an attorney merely defends. (National Exhibition Co. v. Crane, supra; Krauss v. New Era Cab Corp., 259 App. Div. 341; Matter of Snitow v. Jackson, 4 Misc 2d 351.)
Therefore, it was only on January 19, 1972, when Mr. Callaghan on Dr. Spinello’s behalf commenced a proceeding to confirm the arbitration award, that an affirmative claim was made so as to confer the statutory attorney’s lien (Avalon Fabrics v. Raymill Fabric Corp., supra). That Mr. Callaghan was unprotected by a lien while spending his time and energy in preliminary proceedings required to bring on the confirmation proceeding, is perhaps unfortunate (see Cox v. Scott, 10 A D 2d 32), but, incidentally, could have been avoided by his filing a notice of lien, in advance of the confirmation proceeding, pursuant to section 475-a of the Judiciary Law.
Accordingly, Callaghan’s lien attached in time after Mrs. Spinello’s. But, time alone is not determinative.
B. Special Status of Attorneys’ Liens
Irrespective of the dates particular liens come into existence, if one is of a type preferred over the others, that factor must control. (See Matter of Recher v. Gumpp, 253 App. Div. 731; cf. Matter of Meltzer v. Ceglia, 9 Misc 2d 464.)
This is particularly so where no express statute or recording scheme dictates a contrary order of enforcement.
The attorney’s charging lien is a right which vests so that a lawyer who recovers money for his client will not be left uncompensated for his efforts. Like the mechanic’s lien, this principle recognizes the equitable notion that the agent responsible for the creation of an asset, or improvement of property, should have security for payment of his fees out of the very moneys which would not exist but for his services. It is regarded as an equitable assignment to the attorney of the funds produced by his *526 efforts. (1 Carmody-W ait 2d, New York Practice, § 3:144.) And, as to the fund resulting from the attorney’s work, the attorney’s lien enjoys a paramount priority over other claims. (Matter of Peters [Bachmann], 271 App. Div. 518, 523, supra; Matter of Moore v. Hushion, 246 App. Div. 771; Fliashnick v. Burke, 176 App. Div. 367; Bacon v. Schlesinger, 171 App. Div. 503.) A client’s creditors, generally, may enforce their claims only against the net portion of the judgment remaining after the amount of the attorney’s lien has been paid.
Mrs. Spinello urges that her claim is likewise preferred and should be superior to Callaghan’s because it represents alimony and child support which are given special priority in reaching an ex-husband-father’s assets. She relies on cases holding that a wife’s attorney’s lien does not attach to alimony so as to defeat the purpose of support by absorbing and consuming the fund before it can reach the intended beneficiaries, the wife and children. (Turner v. Woolworth, 221 N. Y. 425, 429 ; Romaine v. Chauncey, 129 N. Y. 566.) However, the fund at issue here was not created with the express purpose of benefiting the wife and children.
Figuratively speaking, the lawyer spawned the fund to which the ex-wife is a relative stranger. Should the claim of a creditor, albeit for alimony, be allowed to defeat the attorney’s lien, the protection securing payments of just fees would be defeated. Many clients with just claims, but without independent funds would, as a result, be unable to secure counsel.
Mrs. Spinello similarly cites Mr. Justice Meyer’s prior decision, dated August 6, 1971 (permitting her to partially satisfy a previous judgment for alimony and support arrears out of Dr. Spinello’s interest in the Nassau Physicians Guild Eetirement Plan) as an example of the special preference accorded to her claim here. However, that decision allowed invasion of a fund solely intended to benefit the ex-husband in his retirement. The immediate interests of Spinello’s family came first where the only competing claim was to maintain a growing fund for his possible future retirement maintenance. There was no statutory lien asserted, as here, by a lawyer seeking compensation for efforts that brought the fund into fruition. (See Schenck v. Barnes, 156 N. Y. 316.)
The priority of the charging lien here does not diminish the wife’s enforcement in the outstanding judgment for alimony and support (cf. Turner v. Woolworth, 221 N. Y. 425, supra); in addition to being entitled to the balance of fund after the charging lien is subtracted, she may pursue her enforcement *527 remedies in New York (see Family Ct. Act, § 411), or under principles of full faith and credit, in the jurisdiction where Dr. Spinello now resides.
While some identity to the awarded funds may exist for the claim against Dr. Spinello for arbitration expenses, which Mr. Callaghan asserts on behalf of the American Arbitration Association, there is no special statutory recognition of this debt conferring a lien or priority over other claims. Moreover, this claim has not been reduced to a judgment and is not, in any event, asserted here by the association, the real party in interest.
III. AMOUNT OP ATTORNEY’S LIEN AND WIPE’S NET RECOVERY
CPLR 5227 provides a procedure for a creditor to assert a claim against a debtor’s property in the hands of a third party. It also allows for intervention by “ any adverse claimant ” so that the court “ may determine his rights ”. While Mr. Callaghan has not initiated an independent proceeding to foreclose upon his attorney’s lien pursuant to section 475 of the Judiciary Law, that remedy is not mandatory or exclusive. Accordingly, his claim in this proceeding is cognizable and its amount must be determined in order to arrive at the balance of the fund to be paid over to Mrs. Spinello. (See Matter of Recher v. Gumpp, 253 App. Div. 731, supra; cf. Bergheim v. Hofstatter, 243 App. Div. 568; Matter of Williams v. Kauderer, 5 Misc 2d 152.)
The fee covered by an attorney’s charging lien is only for services rendered in connection with the action, special or other proceeding. (See Matter of Weldon v. De Martini, 35 Misc 2d 710; Matter of Stern, 9 Misc 2d 471; 3 N. Y. Jur., Attorney and Client, p. 564.) While in the absence of a special agreement the fee is assessed by weighing services rendered (Ward v. Craig, 87 N. Y. 550; Reisman v. Independence Realty Corp., 195 Misc. 260, afird. 277 App. Div. 1020), here there was an express agreement that the fee would be one half of the funds recovered.
Moreover, there has been no showing that the fee of $3,750 is unreasonable in view of the extensive services rendered in preparation for and during the proceeding to confirm the arbitration award, and the amounts involved. (See Jackson v. City of New York, 182 Misc. 686; Moorstem & Co. v. Excelsior Ins. Co., 31 A D 2d 177, affd. 25 N Y 2d 651; cf. Scientific Mgt. Inst. v. Mirrer, 29 A D 2d 962.) As the attorney of record throughout the entire proceeding, Mr. Callaghan performed all services required to secure the fund. While some services rendered predated the commencement of the proceeding to confirm the arbitration award, they were nonetheless an integral part of *528 bringing that proceeding and are therefore appropriately included in the lien. (See Matter of Abbruzzo, 139 Misc. 559; Matter of Falk v. National Sur. Co., 128 Misc. 856.) In order to secure the funds, arbitration must, by agreement, have been pursued and applications to stay it defended, after which the award, in order to be enforced, must be confirmed in a proceeding pursuant to CPLR 7510. It would be manifestly unfair to exclude from the attorney’s lien the preliminary legal work necessarily entailed in the bringing of a proceeding. (Cf. Matter of Scheier [Waldick], 159 App. Div. 861, affd. 211 N. Y. 548.)
Accordingly, the application by Mrs. Spinello pursuant to CPLR 5227 is granted to the extent of awarding to her $3,750, the balance of the award after deducting Mr. Callaghan’s legal fees. Respondent Rand is directed to pay $3,750 to John E. Callaghan, Esq., 6 James Lane, Huntington, New York, and $3,750 to Goodman & Da Silva, 1 Old Country Road, Carle Place, New York, Mrs. Spinello’s attorneys for her account, within 30 days of service upon Dr. Rand’s attorney of a copy of the order signed and filed herewith.